## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

ANTWON DONTAE ROLLAND II,

     Plaintiff,

     v.

Case No.: 1:26-cv-1222

Hon. Paul L. Maloney

KALAMAZOO COUNTY, and
DEPUTY DURYL COOK, in his individual capacity

     Defendants.

**Jury Trial Demanded**

MICHAEL L. JONES (P85223)
JONATHAN R. MARKO (P72450)
Attorneys for Plaintiff
**Marko Law, PLLC**
220 W. Congress, Fourth Floor
Detroit, MI 48226
Ph: (313) 777-7777
michael@markolaw.com

## <u>FIRST AMENDED COMPLAINT</u>

**NOW COMES** Plaintiff Antwon Dontae Rolland II, by and through his

attorneys at Marko Law, PLLC, and for his First Amended Complaint against

Defendants Kalamazoo County and Deputy Duryl Cook, states as follows:

### <u>INTRODUCTION</u>

1.     This is a civil rights action arising under 42 U.S.C. § 1983 for malicious

prosecution and Due Process violations. Plaintiff Antwon Dontae Rolland II was

wrongfully arrested, detained for over two years, and prosecuted for homicide based

1

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*        Michael L. Jones, Esq.
Case No.: 1:26-cv-1222        Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

on an investigation in which Deputy Duryl Cook of the Kalamazoo County Sheriff's Office deliberately suppressed exculpatory evidence for more than two years. The withheld evidence contradicted the prosecution's theory and was only disclosed immediately before Plaintiff's favorable case resolution in November 2025. Plaintiff seeks compensatory and punitive damages under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights, as well as damages under Michigan state law for malicious prosecution. Plaintiff also seeks municipal liability against Kalamazoo County pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the County's failure to train and supervise its patrol officers regarding the disclosure of evidence obtained through personal channels and the management of conflicts of interest — failures made all the more egregious by the County's existing written directives, which created conflicting obligations and left patrol deputies with no clear guidance as to their Brady duties when they personally receive evidence related to an active investigation.

## JURISDICTION AND VENUE

2.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as Plaintiff's claims arise under the Constitution of the United States and 42 U.S.C. § 1983. This Court may exercise supplemental jurisdiction over any related state-law claims pursuant to 28 U.S.C. § 1367.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                              Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                             Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

3.      Venue is proper in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Kalamazoo County, which is located within this judicial district.

4.      This First Amended Complaint is filed pursuant to the Court's Order dated June 9, 2026 (ECF No. 10). The Court granted Plaintiff leave to file an amended complaint within twenty-one days after Defendant Kalamazoo County filed its motion to dismiss (ECF No. 9).

## PARTIES

5.      Plaintiff Antwon Dontae Rolland II is an individual and citizen of the State of Michigan and was at all relevant times a resident of Kalamazoo County, Michigan.

6.      Defendant Kalamazoo County is a political subdivision of the State of Michigan, organized under the laws of the State of Michigan. It is responsible for



the operation of the Kalamazoo County Sheriff's Office and for establishing and enforcing the policies, practices, and customs of its law enforcement officers,

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                    Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                    Jon R. Marko, Esq.

including those policies regarding the investigation of crimes and the disclosure of evidence. The Kalamazoo County Sheriff's Office serves as the primary law enforcement agency for over 105,000 residents.

7. As set forth in detail below, Kalamazoo County, through the Kalamazoo County Sheriff's Office, promulgated and maintained written directives governing the conduct of its personnel. Those directives, while requiring that personnel not withhold material information from reports and cooperate in criminal investigations, contained no provision specifically training patrol officers in their obligation to disclose evidence received through personal or family channels to the Criminal Investigation Division, and contained no provision requiring officers to report and seek recusal from matters in which a personal or familial conflict of interest existed. The County's failure to address these obvious gaps, and the confusing effect of its confidentiality directives on officers' Brady disclosure obligations, constitutes deliberate indifference to the constitutional rights of persons like Plaintiff.

8. Defendant Deputy Duryl Cook was at all relevant times a Deputy Sheriff employed by the Kalamazoo County Sheriff's Office. In or around June 2020, Kalamazoo County hired Defendant Cook into the operations division. In performing the acts alleged in this Complaint, Defendant Cook acted under color of state law. Defendant Cook is sued in his individual capacity.

**Amended Complaint**
*Rolland v. Kalamazoo County, et al.*                              Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                             Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

## STATEMENT OF FACTS

### A. Plaintiff's Circumstances in July 2023

9.      Plaintiff Antwon Dontae Rolland II was twenty-one (21) years old in July 2023.

10.     At the time of the events giving rise to this action, Plaintiff resided in Kalamazoo County, Michigan.

11.     On July 23, 2023, Mr. Rolland was at the Concord Place Apartments at 1506 Concord Place Drive in Oshtemo Township, Kalamazoo County, Michigan.

### B. The Shooting at Concord Place Apartments

12.     On July 23, 2023, at approximately 8:14 p.m., Davion Johnson, armed with a loaded Glock 9mm pistol, fired twice at Mr. Rolland. Multiple 911 calls were received by the Kalamazoo County Consolidated Dispatch Authority reporting a shooting at 1506 Concord Place Drive in Oshtemo Township, Kalamazoo County, Michigan.

13.     Mr. Rolland, facing an armed man, fired back in self-defense at Mr. Johnson.

14.     Multiple gunshots were fired at Mr. Johnson, striking him multiple times.

15.     Mr. Johnson was transported to Bronson Methodist Hospital where he was pronounced deceased at 8:45 p.m. by Dr. Jon Walsh.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                              Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                              Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

16.     What Defendants framed as a premeditated murder, the physical evidence told a different story. Forensic analysis of a TikTok video (audio only) revealed that the nine-millimeter shot twice before the gunfire from the rifle — definitively establishing that Mr. Johnson fired the 9mm pistol first.

17.     Prosecutor Mary Ann Berdan herself acknowledged the significance of this sequence, and within 15 minutes of learning this, the murder charge against Mr. Rolland was dropped. The case that kept Mr. Rolland locked up for over two years — with a potential life sentence — collapsed the moment the truth about who fired the first shot was revealed.

## C. The Immediate Investigation

18.     Deputies from the Kalamazoo County Sheriff's Office and officers from the Kalamazoo Department of Public Safety responded to the scene.

19.     At the scene, investigators recovered multiple spent shell casings, including eight (8) to nine (9) rifle casings of 5.56mm caliber, commonly associated with AR-15 style rifles, and one (1) spent 9mm shell casing.

20.     A Glock 48 9mm pistol, serial number BKZA004, was found on the ground near Mr. Johnson's body.

21.     Witnesses reported seeing a black male dressed in all black clothing carrying a long rifle and fleeing in a white Chevrolet Malibu.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                    Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                       Jon R. Marko, Esq.

22.     The white Chevrolet Malibu was later identified as bearing Michigan license plate EPU0039.

23.     On July 29, 2023, investigators recovered an R Guns TRR15 rifle, caliber 5.56mm, serial number BAK15440, from dense foliage near South 11th Street and West KL Avenue in Kalamazoo County, approximately one-quarter mile from the shooting scene.

## D. Deputy Cook's Suppression of Critical Evidence

24.     Deputy Cook was one of the first officers on scene at the July 23, 2023 shooting at 1506 Concord Place Drive.

25.     Deputy Cook was aware that his nephew, Jacorian Thompson, lived in the apartment directly above the victim, Davion Johnson, and his girlfriend Shonita Anderson at the time of this incident.

26.     On July 24, 2023, the next day, Deputy Cook reached out to his sister, Tamisha Cook, whose son, Jacorian Thompson, resides in Concord Apartments.

27.     Deputy Cook learned that at the time of this shooting, his nephew was playing an online game called Y2K (basketball game) with multiple online gamers.

28.     During the shooting, the audio from the incident was captured through Jacorian Thompson's gaming system. Jacorian told his uncle that the video picked up the sound of gunfire and that one of the other gamers recorded the incident from the online play.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

29.     This unidentified gamer uploaded this to the social media platform 'TikTok.'

30.     Jacorian then provided the video clip to Deputy Cook and his mother Tamisha on July 24th, 2023, at 3:11pm.

31.     Deputy Cook was then supplied a TikTok video (short clip) of what his nephew and these gamers heard while playing this game. The sound quality to this video is greater than the previous 'TikTok' video entered and presented in this case.

32.     The audio recording was material evidence that could establish the sequence of gunfire during the incident.

33.     Deputy Cook says he did not share this video or inform anyone in the Criminal Investigation Division ["CID"] of the existence of this video until his conversation with Detective Sergeant Misner on November 3, 2025.

34.     Cook did not disclose the recording to any investigators assigned to the homicide case.

35.     Cook did not disclose the recording to the Kalamazoo County Prosecutor's Office.

36.     Cook maintained possession of this critical evidence without disclosing it to anyone for over two years.

37.     Deputy Cook says he did not believe this video held any evidentiary value, as it was an audio recording only, and did not show any video of the incident

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                                     Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                                    Jon R. Marko, Esq.

or involved parties. This unilateral judgment by a patrol officer — substituting his own lay assessment of materiality for the professional disclosure standard — is precisely the kind of failure that adequate training is designed to prevent.

38.    On November 3rd, 2025, at the Kalamazoo County Sheriff's Office, Detective Sergeant Misner ran into KCSO Deputy Duryl Cook at the afternoon shift patrol briefing. In their brief conversation, the topic of the Antwon Rolland homicide trial came up. It is at this time Misner was informed by Deputy Cook that his nephew lived above the victim's apartment at 1506 Concord Place Drive. Misner then learned from Deputy Cook the existence of a video (TikTok) recording of the shooting.

39.    Later in the afternoon, Deputy Cook forwarded this evidence to Detective Sergeant Misner's county email. Upon reviewing, Misner recognized this to be valuable evidence to this case.

40.    Detective Sergeant Misner conducted a formal interview with Deputy Cook as to the origin of this evidence.

41.    The video has been secured onto a thumb drive and placed into KCSO evidence. A copy of this video has been provided to the prosecutor's office and Sgt. Dunlop for his review. A copy of this video has *never* been provided to Mr. Rolland our his counsel.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                    Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                    Jon R. Marko, Esq.

42.    After Sergeant Dunlop listened to it, it was his belief and it would be his testimony that that video, listening to that, the nine-millimeter shot twice before the gunfire from the rifle.

43.    This sequence of fire was material and exculpatory evidence supporting Plaintiff's claim of self-defense, as it established that the victim Davion Johnson fired first. The suppressed evidence directly contradicted the prosecution's theory of premeditated murder and undermined the entire basis for the murder charges against Plaintiff.

44.    Cook's familial relationship with the source of the evidence, his nephew Jacorian Thompson, created an inherent conflict of interest that required disclosure to supervisors and prosecutors.

45.    A reasonable law enforcement officer in Cook's position would have known that audio evidence capturing the sequence of gunfire in a homicide investigation was material evidence that must be disclosed to investigators and prosecutors.

46.    Cook's deliberate failure to disclose this exculpatory evidence for over two years, combined with his conflict of interest, demonstrates either intentional suppression or reckless disregard for Plaintiff's constitutional rights.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                                    Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                                        Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

**E. Kalamazoo County's Written Directives and the Critical Policy Gaps**

47.    At all relevant times, Kalamazoo County, through the Kalamazoo County Sheriff's Office, had promulgated and maintained written directives governing the conduct of all KCSO personnel. These directives are binding on every employee.

48.    Kalamazoo County publicly acknowledged the scope and purpose of its written directive system on the KCSO's own website, stating: "The Kalamazoo County Sheriff's Office (KCSO) has an obligation to provide all employees with a clear understanding of their duties and responsibilities as well as the constraints under which they should operate and the expectations they should fulfill. The Kalamazoo County Sheriff's Office also has an obligation to the public to provide law enforcement and jail services under the guidance of a formal written directive system of rules and regulations, policies, and procedures. To achieve these obligations, the written directive system is formulated by this order and thereby instituted. A written directive is any written document used to guide or affect the performance or conduct of KCSO employees. Sheriff Fuller has committed to sharing the Kalamazoo County Sheriff's Office Written Directives with the public." By its own public representation, the County undertook to ensure that every employee had a clear understanding of their duties, responsibilities, and the expectations they must fulfill. The County's failure to provide any directive,

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                                    Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                                        Jon R. Marko, Esq.

training, or guidance addressing a patrol officer's obligation to disclose evidence received through personal channels or to report a familial conflict of interest connected to an active investigation is therefore a direct breach of the obligation the County publicly imposed upon itself — and reflects deliberate indifference to the constitutional rights of persons like Plaintiff who depend on KCSO officers fulfilling those duties.

49.    KCSO Written Directive No. 1.0.4 (Rules and Regulations) provides that "KCSO personnel shall adhere to the directives, policies, procedures, rules and regulations of KCSO" and that personnel "shall not commit any acts or omissions, which constitute neglect of duty, conduct unbecoming an officer, or which is likely to adversely affect directives, the discipline, or reputation of the Kalamazoo County Sheriff's Office."

50.    Section IV.B of Directive 1.0.4 requires that KCSO employees "shall never allow personal feelings, animosities, or friendships to influence official conduct."

51.    Section VII.A of Directive 1.0.4, addressing Reporting Requirements, provides that "Personnel shall not intentionally make false reports or statements, or enter or cause to be entered in any KCSO book, or record, or report false information, either written or verbally. Personnel shall not, without supervisor or higher authority,

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                                    Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                                         Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

withhold material matter from a report, statement, record, or file. All personnel will submit all necessary reports daily and in accordance with KCSO procedures."

52.    Section IX.B of Directive 1.0.4 provides that "[i]t shall be the duty of every employee to properly report any information given in good faith by a citizen regarding matters which indicate the need for action or recording by KCSO."

53.    Section IX.C of Directive 1.0.4 provides that "[p]ersonnel shall cooperate with KCSO personnel and personnel of other government agencies in the investigation of criminal matters or incidents."

54.    KCSO Written Directive No. 1.0.2, the Code of Ethics adopted from the Michigan Sheriff's Association, provides that every sworn member shall "never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities or friendships to influence my decisions." The Code further requires that each officer pledge to "protect the innocent against deception" and to be "[h]onest in thought and deed both in my personal and official life."

55.    KCSO Written Directive No. 1.0.36 (Disclosure of Official KCSO Business) provides that "[i]nformation pertaining to official KCSO business including information gathered in criminal investigations, investigative reports, information or knowledge arising from KCSO investigations, activities and performance of duties is confidential. It is the responsibility of each KCSO member

**Amended Complaint**

to maintain said confidentiality regardless of whether he/she may come into such information by official duty or otherwise."

56.    Directive 1.0.36 further provides that "[s]uch information relating to official KCSO business shall not be disclosed by any member of KCSO except as required by statute, subpoena, court order, or other process of law, or if specific disclosure is approved and directed by the appropriate Division Command."

57.    Despite these existing directives, Kalamazoo County maintained no written policy, procedure, or training that specifically addressed the following situations that are obvious and recurring in law enforcement operations: (a) a patrol officer who responds to a scene where a family member resides receives evidence from that family member related to the investigation — what are his obligations regarding disclosure to CID and supervisors; and (b) a patrol officer who responds to a scene has a personal or familial connection to a witness, resident, or source of evidence connected to the investigation — what are his obligations to disclose that conflict of interest and seek recusal.

58.    These gaps are critical because Directive 1.0.36, on its face, designates all information arising from KCSO criminal investigations as "confidential," and restricts disclosure without Division Command approval. Without specific training on the distinction between confidentiality obligations — which govern external disclosure — and Brady disclosure obligations — which require routing evidence

*Rolland v. Kalamazoo County, et al.*                    Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                    Jon R. Marko, Esq.

up the chain to CID and prosecutors — a patrol officer in Cook's position could plausibly conclude that sharing the TikTok recording with CID constituted an unauthorized disclosure of "official KCSO business" rather than a required act of Brady compliance. The County's failure to reconcile these competing directives and provide specific training on an officer's affirmative duty to report evidence received through personal channels, and to disclose conflicts of interest, directly caused the constitutional violation at issue.

## F. Kalamazoo County's Failure to Train

59.    Kalamazoo County failed to train its patrol officers and first responders on their obligation to document, report, and immediately disclose to the Criminal Investigation Division any evidence they receive or obtain in connection with an active investigation through personal or extrajudicial channels, regardless of whether they are formally assigned to that investigation. The existing directives — while requiring reporting to supervisors and prohibiting the withholding of material matter from "a report, statement, record, or file" — addressed the formal reporting obligations of assigned investigators, not the specific situation confronted by Cook: a patrol officer in the operations division who receives evidence directly from a family member outside any formal investigative process.

60.    The risk that this training gap would produce exactly the kind of constitutional violation at issue here was not merely foreseeable — it was

**Amended Complaint**

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

specifically identified in the professional literature governing law enforcement Brady obligations. Cook unilaterally decided that the TikTok recording "did not hold any evidentiary value, as it was an audio recording only." He was wrong, and he was wrong because the County gave him no training requiring him to turn that judgment over to investigators rather than make it himself.

61.    The applicable professional standard for Brady materiality — well established in the case law and recognized in guidance adopted by professional organizations — is not whether an officer believes evidence has value, but whether the defense could use it. As the *Brady-Giglio Guide* instructs, "a prosecutor should not try to determine the impact of the evidence on the trial's outcome; the only question is: could the defense use it?" Under this standard, the TikTok recording — which captured the sequence of gunfire in a homicide where self-defense was the obvious defense theory — was unquestionably disclosable. A patrol officer who receives such evidence and makes a unilateral determination that it is not material has substituted his own lay judgment for the professional disclosure standard. The County was obligated to train its officers against doing exactly that, and it did not.

62.    As recognized by the Sixth Circuit in *Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019): "police can commit a constitutional deprivation analogous to that recognized in *Brady* by withholding or suppressing exculpatory material." The court further confirmed that "[t]he duty to disclose is that of the state, which

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

JM MARKO LAW

ordinarily acts through the prosecuting attorney; but if he too is the victim of police suppression of the material information, the state's failure is not on that account excused." The County was on constructive notice that its patrol officers, who regularly respond to crime scenes in communities where they live and have family connections, would encounter exactly the situation confronted by Cook: the receipt of case-related evidence through a personal channel. The predictability of this situation — and the predictability that an officer lacking specific training would fail to disclose such evidence — satisfies the deliberate indifference standard set forth in *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997) and *Connick v. Thompson*, 563 U.S. 51 (2011).

63. The Kalamazoo County Prosecutors' offices did not establish procedures for requesting information about allegations of an officer's misconduct that are contained in the employing law enforcement agency's personnel files. The procedures should include the designation of a person to make requests from the law enforcement agencies, standards for review, and general rules regarding circumstances for disclosure. This reflects the broader professional consensus that Brady compliance requires formal protocols and designated channels — not ad hoc judgment calls by individual patrol officers. Kalamazoo County had no such protocols for patrol officers who informally receive evidence through personal channels, no designated person responsible for ensuring that evidence reaches CID,

17

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

and no training on the obligation to do so. This institutional gap directly caused Plaintiff's constitutional deprivation.

64.    Kalamazoo County further failed to train its officers on their obligation to disclose conflicts of interest and seek recusal when a personal or familial relationship exists with a witness, resident, or source of evidence connected to an active criminal investigation. Deputy Cook had an obvious and significant conflict of interest from the moment he arrived at the scene: his nephew lived directly above the victim's apartment. KCSO Directive 1.0.4 requires that employees "shall never allow personal feelings, animosities, or friendships to influence official conduct," but the County provided no training on how an officer must implement this obligation when confronted with a concrete conflict of interest — no policy or training required Cook to identify himself to supervisors as having a family member connected to the crime scene, and no policy required supervisors to inquire of responding officers whether they had any personal connection to the scene or its residents.

65.    This training failure was not remedied by any existing KCSO directive. While Section VI.G of Directive 1.0.4 requires personnel to "promptly notify the Sheriff or Undersheriff...in the event they are subject to...a suspect, victim, or witness in a criminal investigation conducted by another law enforcement agency," this provision does not extend to officers who have a family member serving as a

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

source of evidence, nor does it apply to the conflict of interest presented when an officer's family member is a potential witness or evidence conduit in an investigation. The gap between what the directive covered and the obvious situation that arose — an officer whose nephew lived at the crime scene and provided him with evidence — reflects the County's failure to anticipate and address a foreseeable scenario.

66.     As stated in *Kyles v. Whitley*, 514 U.S. 419 (1995), prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." For that duty to be dischargeable in practice, the police must have internal systems that surface evidence to prosecutors — systems that depend on officers disclosing conflicts of interest and routing evidence up the chain. Where, as here, no such internal system exists and an officer with a conflict of interest is left to manage evidence entirely on his own, the government's Brady obligation is effectively nullified at the source. The County's failure to build those systems despite this clearly established legal framework constitutes deliberate indifference.

67.     Good faith is no defense to a Brady violation: "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83,

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

87 (1963). Kalamazoo County cannot escape *Monell* liability by pointing to Cook's subjective belief that the recording lacked evidentiary value. The constitutional obligation is objective, and the County's failure to train its officers to that objective standard — rather than leaving them to apply their own lay judgment — is itself the constitutional wrong.

## G. Kalamazoo County's Failure to Supervise

68.    Kalamazoo County also failed to adequately supervise Deputy Cook in connection with the July 23, 2023 homicide investigation. Cook was one of the first officers to arrive at 1506 Concord Place Drive, where his own nephew resided directly above the victim's apartment. This conflict of interest was objectively apparent to any supervisor who reviewed the initial response roster alongside the incident location. Yet no supervisor inquired of Cook whether he had any personal connection to the crime scene, the victim, the witnesses, or any of the residents.

69.    Had basic supervisory follow-up been conducted — asking Cook, or any responding officer, whether he had any personal connection to the scene — the conflict of interest and the TikTok recording would have been discovered at the outset of the investigation in July 2023. Plaintiff would not have spent over two years incarcerated on a murder charge. The complete absence of any such supervisory follow-up reflects the County's systemic indifference to managing conflicts of interest among its patrol officers.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                    Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                    Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

JM MARKO LAW

70.    As the Sixth Circuit has recognized, a municipality's deliberate indifference may be shown by "evidence of a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." A patrol officer being one of the first responders to a homicide scene where his own family member resides is precisely the kind of recurring situation for which a law enforcement agency must have protocols — because the risk of compromised evidence handling in that situation is patent and obvious. A "custom of failing to train its officers on the handling of exculpatory materials is sufficient to establish the requisite fault on the part of the [municipality]" for a deliberate indifference claim. *Jackson* 925 F.3d at 804.

## H. Causal Link Between County Failures and Plaintiff's Constitutional Deprivation

71.    The causal link between Kalamazoo County's training and supervisory failures and the violation of Plaintiff's constitutional rights is direct. But for the County's failure to train patrol officers that evidence received through personal channels must be reported to CID, and but for the County's failure to have any supervisory mechanism for identifying and managing conflicts of interest among responding officers, Cook would have disclosed both his conflict of interest and the TikTok recording on or shortly after July 24, 2023. The murder charge against

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                                    Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                                    Jon R. Marko, Esq.

Plaintiff would not have been pursued — or at the very least, Plaintiff would not have spent over two years incarcerated on a life offense.

72.   The County's existing confidentiality directive affirmatively contributed to this failure by treating all criminal investigation information as "confidential" without carving out a clear exception or affirmative duty for patrol officers to report evidence received through personal channels to CID. In the absence of specific training to reconcile this directive with an officer's Brady disclosure obligations, the directive created precisely the kind of ambiguity that enabled Cook's continued silence. The County publicly committed to providing every employee with "a clear understanding of their duties and responsibilities as well as the constraints under which they should operate." It failed entirely to fulfill that commitment with respect to Brady disclosure and conflict of interest management, and Plaintiff paid the price.

**I. Plaintiff's Arrest, Detention, and Prosecution**

73.   On August 15, 2023, approximately three weeks after the July 23, 2023 shooting, Plaintiff Antwon Dontae Rolland II was arrested by the Michigan State Police Fugitive Team at the Walmart located at 6065 Gull Road in Comstock Township, Kalamazoo County, Michigan.

74.   The arrest was executed pursuant to a warrant issued by the 9th Circuit Court for Kalamazoo County on August 2, 2023.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*          Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                         Jon R. Marko, Esq.

75.     Plaintiff was charged with three felony counts: (1) Open Murder in violation of M.C.L. 750.316, a life offense; (2) Felony Firearm in violation of M.C.L. 750.227b, a two-year mandatory consecutive sentence; and (3) Felon in Possession of a Firearm in violation of M.C.L. 750.224f, a five-year felony.

76.     The case was assigned to the Honorable Christine A. Morse and docketed as Case No. 23-1454-FC in the 9th Circuit Court for Kalamazoo County.

77.     The prosecution was handled by Mary Ann Berdan of the Kalamazoo County Prosecutor's Office.

78.     From the date of his arrest on August 15, 2023, until his release on November 5, 2025, Plaintiff remained continuously detained in the Kalamazoo County Jail, a period of approximately two years and three months.

79.     During his detention, Plaintiff was unable to post bond and remained incarcerated pending trial on charges that carried a potential sentence of life imprisonment.

80.     The prosecution's theory of the case was that Plaintiff had intentionally and with premeditation shot and killed Davion Johnson, as evidenced by the rifle recovered near the scene and circumstantial evidence linking Plaintiff to the vehicle observed fleeing the scene.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

## J. Disclosure of Evidence and Favorable Termination

81.     On November 3rd, 2025, at the Kalamazoo County Sheriff's Office, Detective Sergeant Warren Misner ran into KCSO Deputy Duryl Cook at the afternoon shift patrol briefing. In their brief conversation, the topic of the Antwon Rolland homicide trial came up. It is at this time Misner was informed by Deputy Cook that his nephew lived above the victim's apartment at 1506 Concord Place Drive. Misner then learned from Deputy Cook the existence of a video (TikTok) recording of the shooting.

82.     Upon reviewing the TikTok recording, Detective Sergeant Misner recognized this to be valuable evidence to this case.

83.     On November 4, 2025, Detective Sergeant Misner contacted Prosecutor Berdan with the forensic findings.

84.     Sergeant Dunlop's analysis determined that the nine-millimeter shot twice before the gunfire from the rifle, directly contradicting the prosecution's theory of premeditated murder and establishing the material exculpatory value of the recording that Cook had suppressed for over two years.

85.     On November 5, 2025, a plea hearing was held before the Honorable Christine A. Morse. At the hearing, the prosecution and defense reached a resolution whereby Plaintiff would plead no contest to Count Two (Felony Firearm) in exchange for dismissal of Count One (Open Murder).

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

86.     The plea agreement included "credit time served" and Plaintiff was released on a personal recognizance bond on November 5, 2025.

87.     Defense counsel stated on the record: "We offered the no contest plea, Your Honor, in light of the civil ramifications that may surround this case."

88.     The dismissal of the murder charge — the most serious charge and the focus of this malicious prosecution action — constituted a favorable termination of the criminal proceeding as a matter of law, particularly where the dismissal was directly connected to the belated disclosure of exculpatory evidence that had been deliberately suppressed for over two years.

**K. Plaintiff's Damages and Harm Suffered**

89.     As a direct and proximate result of the malicious prosecution initiated by Defendants, Plaintiff Antwon Dontae Rolland II suffered a substantial deprivation of his liberty. He was arrested, incarcerated for approximately two years and three months, and forced to defend himself against a murder charge carrying a potential life sentence.

90.     During his incarceration, Plaintiff suffered severe emotional and psychological harm, including post-traumatic stress disorder (PTSD), panic attacks, nightmares, and severe anxiety. He was prescribed the medication Remeron for his PTSD symptoms and has been receiving ongoing therapy with Dr. Bill Brooks of Kalamazoo Psych.

91.     Plaintiff experienced physical manifestations of his emotional distress, including hair loss, irritable bowel syndrome (IBS), night sweats, weight fluctuations, and sleep disturbances that continue to this day.

92.     As a result of his wrongful incarceration, Plaintiff missed the birth of his son, which occurred approximately one month after his arrest, depriving him of this irreplaceable life event and the opportunity to bond with his child during the critical early period of his son's life.

93.     Plaintiff's reputation in the Kalamazoo community has been severely damaged. Members of the community continue to question him about the murder charges, subjecting him to public stigma and humiliation despite the favorable resolution of his case.

94.     Plaintiff has suffered substantial economic losses, including the loss of approximately one to two years of career growth and educational advancement opportunities while incarcerated, as well as the loss of employment opportunities due to the public murder charges appearing in background checks.

95.     Plaintiff was forced to retain criminal defense counsel and incurred substantial attorney's fees, expert witness fees, and investigation costs in defending himself against the baseless murder charge.

26
**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

96.     Plaintiff continues to suffer from the ongoing effects of his wrongful prosecution and incarceration, including continuing psychological symptoms, damaged reputation, and diminished economic prospects.

## COUNT I
### 42 U.S.C. § 1983 — Malicious Prosecution, Fourth Amendment
(Against Defendant Deputy Duryl Cook)

97.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

98.     To succeed on a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must prove that: (1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010); *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017).

99.     The first element of the malicious prosecution claim is met when an officer "could reasonably foresee that his misconduct would contribute to an independent decision that results in a deprivation of liberty" and the misconduct actually does so. This element is met when an officer withholds exculpatory evidence from the decision-makers.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*          Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                          Jon R. Marko, Esq.

100.   Defendant Deputy Cook, acting under color of law, made, influenced, or participated in the decision to initiate a criminal prosecution against Plaintiff by deliberately suppressing material exculpatory evidence from the investigating detectives and the Kalamazoo County Prosecutor's Office. Cook was one of the first officers on scene and obtained the TikTok recording within one day of the homicide. Deputy Cook says he did not share this video or inform anyone in CID of the existence of this video for over two years, thereby ensuring that prosecutors and investigators operated on an incomplete and misleading factual record when initiating and continuing charges against Plaintiff.

101.   There was a complete lack of probable cause for the criminal prosecution of Plaintiff for Open Murder. The nine-millimeter fired twice before the rifle shots — had this evidence been disclosed as obtained, it would have established the Johnson's aggression and supported a self-defense claim, negating the probable cause predicate for the premeditated murder charge.

102.   This evidence was classic Brady material — evidence favorable to the accused that is material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83 (1963). The correct test for materiality is not the impact of evidence on the trial's outcome but simply whether the defense could use it. The answer here is plainly yes: audio evidence establishing the victim fired first is quintessential self-defense evidence.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                                        Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                                            Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

103. As the Sixth Circuit has held, "police can commit a constitutional deprivation analogous to that recognized in *Brady* by withholding or suppressing exculpatory material," and "[t]he duty to disclose is that of the state, which ordinarily acts through the prosecuting attorney; but if he too is the victim of police suppression of the material information, the state's failure is not on that account excused." *Jackson*, 925 F.3d at 824.

104. Defendant Cook acted with malice or, at a minimum, with reckless disregard for the truth and Plaintiff's rights by deliberately suppressing material exculpatory evidence for over two years while Plaintiff remained incarcerated on a life offense.

105. As a consequence of the legal proceedings, Plaintiff suffered a significant and substantial deprivation of liberty apart from his initial seizure. He was incarcerated for approximately two years and three months — from August 15, 2023, until November 5, 2025.

106. The criminal proceeding, *People v. Antwon Rolland*, Case No. 23-1454-FC, was resolved in Plaintiff's favor when Count One (Open Murder) was dismissed. The dismissal of the murder charge constituted a favorable termination as a matter of law.

107. Qualified immunity does not shield Defendant Cook from liability. It was clearly established law — decades before this case — that "police can commit

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

a constitutional deprivation analogous to that recognized in *Brady* by withholding or suppressing exculpatory material." And as *Brady* itself established, suppression of material exculpatory evidence violates due process "irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). No reasonable officer could have believed that concealing material exculpatory evidence obtained directly from a family member at the crime scene, while hiding the familial conflict of interest, for over two years while a defendant remained incarcerated on a life offense, was constitutionally permissible.

108.   Moreover, KCSO's own Written Directive 1.0.4 expressly prohibited personnel from withholding "material matter from a report, statement, record, or file" and required that employees "shall never allow personal feelings, animosities, or friendships to influence official conduct." The Code of Ethics Cook swore required him to "protect the innocent against deception" and to be "[h]onest in thought and deed both in my personal and official life." Cook cannot claim ignorance of these obligations.

109.   As a direct and proximate result of Defendant Cook's conduct, Plaintiff suffered irreparable harm, including loss of liberty for over two years, severe emotional distress, post-traumatic stress disorder requiring ongoing treatment, humiliation, damage to his reputation, and significant financial losses including criminal defense attorneys' fees and costs.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                                          Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                                          Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

**WHEREFORE**, Plaintiff seeks judgment against Defendant Deputy Duryl Cook for compensatory damages, punitive damages, costs, and attorney fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

### COUNT II
### 42 U.S.C. § 1983 — Due Process Violations (Fourteenth Amendment)
(Against Defendant Deputy Duryl Cook)

110.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

111.   The Fourteenth Amendment to the United States Constitution protects individuals from being subjected to criminal proceedings on the basis of deliberately fabricated or suppressed evidence. The deliberate fabrication or suppression of material exculpatory evidence violates a defendant's substantive due process right to a fair criminal process. *Gregory v. City of Louisville*, 444 F.3d 725, 729 (6th Cir. 2006); *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999).

112.   To establish a due process violation based on suppression of exculpatory evidence, Plaintiff must prove that: (1) Defendants suppressed evidence that was favorable to the accused; (2) the suppression harmed the accused; and (3) Defendants acted with deliberate indifference to the accused's constitutional rights or with reckless disregard for the truth.

113.   Deputy Cook says he did not share this video or inform anyone in CID of the existence of this video until his conversation with Detective Sergeant Misner

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

on November 3, 2025 — a suppression lasting from July 24, 2023 to November 3, 2025, a period of over two years.

114.  The suppressed evidence was highly favorable to Plaintiff: Sergeant Dunlop's forensic analysis determined that the nine millimeter shot twice before the gunfire from the rifle, directly contradicting the prosecution's theory of premeditated murder and supporting Plaintiff's self-defense claim.

115.  Defendant Cook acted with deliberate indifference to Plaintiff's constitutional rights by consciously and recklessly disregarding the consequences of withholding this critical evidence while Plaintiff remained incarcerated on a life offense. Cook was one of the first officers on scene and knew from the outset that Jacorian Thompson lived in the apartment directly above the victim, Davion Johnson. His concealment of both the evidence and his conflict of interest for over two years, while a man faced life imprisonment, shocks the conscience.

116.  The right to be free from the government's knowing suppression of material exculpatory evidence has been clearly established since *Brady v. Maryland*, 373 U.S. 83 (1963), and it was equally clearly established that "police can commit a constitutional deprivation analogous to that recognized in *Brady* by withholding or suppressing exculpatory material." *Brady*'s protection operates "irrespective of the good faith or bad faith of the prosecution," *Brady*, 373 U.S. at 87, and the same

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                                Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                                    Jon R. Marko, Esq.

standard applies to police officers who suppress evidence before it ever reaches the prosecutor.

117. This Count differs from and complements the Fourth Amendment malicious prosecution claim in Count I. While Count I focuses on the initiation of prosecution without probable cause, this Count focuses on the fundamental unfairness of the criminal process itself — the government's deliberate suppression of evidence to maintain a prosecution, thereby denying Plaintiff his right to a fair proceeding.

118. Qualified immunity does not shield Defendant Cook from liability. Under the KCSO Code of Ethics, every sworn member pledged to "protect the innocent against deception" and to be "[h]onest in thought and deed both in my personal and official life." No reasonable officer could believe that suppressing material exculpatory evidence for over two years — while hiding a familial conflict of interest — was consistent with clearly established constitutional law or his own sworn obligations.

119. As a direct and proximate result of Defendant Cook's conduct, Plaintiff suffered irreparable harm, including loss of liberty for over two years, severe emotional distress, post-traumatic stress disorder requiring ongoing treatment, humiliation, damage to his reputation, and significant financial losses.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

**WHEREFORE**, Plaintiff seeks judgment against Defendant Deputy Duryl Cook for compensatory damages, punitive damages, costs, and attorney fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

### COUNT III
### 42 U.S.C. § 1983 — Municipal Liability (*Monell*)
(Against Defendant Kalamazoo County)

120.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

121.   A municipality may be held liable under 42 U.S.C. § 1983 where a constitutional deprivation results from an official policy or custom, or where the municipality's failure to train or supervise its officers amounts to deliberate indifference to the constitutional rights of persons with whom those officers come into contact. *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).

122.   "A local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for § 1983 purposes, but the failure to train must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997).

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

123. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." A plaintiff may meet this standard by showing "evidence of a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation."

124. At all relevant times, Kalamazoo County was the employer of Deputy Duryl Cook and the entity responsible for the policies, training, and supervision of the Kalamazoo County Sheriff's Office and Kalamazoo County Prosecutor's Office. The County cannot escape this responsibility. By its own public representation, the County undertook "an obligation to provide all employees with a clear understanding of their duties and responsibilities as well as the constraints under which they should operate and the expectations they should fulfill" through "a formal written directive system of rules and regulations, policies, and procedures." Having made that commitment publicly and institutionally, the County's failure to address the specific, recurring, and obvious scenario of a patrol officer receiving evidence through personal channels — and its failure to resolve the tension between its own confidentiality directive and officers' Brady obligations — is not an oversight. It is a deliberate institutional failure that directly caused Plaintiff's constitutional deprivation.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

**Failure to Train — Evidence Disclosure by Non-Investigative Officers**

125.   Kalamazoo County failed to train its patrol officers and first responders on their obligation to report and disclose to the Criminal Investigation Division any evidence they receive or obtain in connection with an active investigation through personal or extrajudicial channels, regardless of whether they were formally assigned to that investigation. While KCSO Directive 1.0.4 requires personnel not to "withhold material matter from a report, statement, record, or file" and to "cooperate with KCSO personnel and personnel of other government agencies in the investigation of criminal matters or incidents," these provisions addressed the formal reporting obligations of assigned investigators and did not address the specific situation in which a patrol deputy in the operations division receives evidence directly from a family member outside any formal investigative process. The County cannot fulfill its self-described obligation to give every employee "a clear understanding of their duties and responsibilities" by relying on general provisions that do not speak to the officer's actual situation.

126.   The risk that this training gap would produce exactly the kind of constitutional violation at issue here was not merely foreseeable — it was specifically identified in the professional literature governing law enforcement Brady obligations. The American College of Trial Lawyers' *Brady-Giglio Guide for Prosecutors* (Sept. 2021), reflecting the established professional consensus on Brady

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

compliance, expressly warns: "It is never safe to assume that a law enforcement agency has provided everything relevant to the case. Law enforcement officers make judgments about matters that they deem irrelevant and often exclude them from reports. While these judgments are often accurate, there are times when officers fail to recognize exculpatory, and even inculpatory, evidence." This is precisely what occurred here: Cook allegedly decided the TikTok recording "did not hold any evidentiary value, as it was an audio recording only." He was wrong, and he was wrong because the County gave him no training requiring him to turn that judgment over to investigators rather than make it himself.

127.    The applicable professional standard for Brady materiality — well established in the case law and recognized in guidance adopted by professional organizations — is not whether an officer believes evidence has value, but whether the defense could use it. As the *Brady-Giglio Guide* instructs, "a prosecutor should not try to determine the impact of the evidence on the trial's outcome; the only question is: could the defense use it?" Under this standard, the TikTok recording — which captured the sequence of gunfire in a homicide where self-defense was the obvious defense theory — was unquestionably disclosable. A patrol officer who receives such evidence and makes a unilateral determination that it is not material has substituted his own lay judgment for the professional disclosure standard. The County was obligated to train its officers against doing exactly that, and it did not.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                                Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                              Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

128. The County's failure to train is further compounded by the structure of its own confidentiality directive. KCSO Directive 1.0.36 declares that "[i]nformation pertaining to official KCSO business including information gathered in criminal investigations...is confidential" and that "[s]uch information relating to official KCSO business shall not be disclosed by any member of KCSO except as required by statute, subpoena, court order, or other process of law, or if specific disclosure is approved and directed by the appropriate Division Command." Without specific training reconciling this directive with an officer's Brady disclosure obligations — obligations that run upward to CID and prosecutors, not outward to unauthorized parties — a patrol officer in Cook's position could plausibly read Directive 1.0.36 as prohibiting him from voluntarily routing informally received evidence to CID without Division Command authorization. The County's failure to address this tension in its training program, despite its public commitment to give every employee a clear understanding of the constraints under which they operate, demonstrates deliberate indifference.

129. The *Brady-Giglio Guide* confirms that managing the flow of Brady material between law enforcement and prosecutors requires deliberate institutional structure: "Prosecutors' offices should consider establishing procedures for requesting information about allegations of an officer's misconduct that are contained in the employing law enforcement agency's personnel files. The

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

procedures should include the designation of a person to make requests from the law enforcement agencies, standards for review, and general rules regarding circumstances for disclosure." This guidance reflects the broader professional consensus that Brady compliance requires formal protocols and designated channels — not ad hoc judgment calls by individual patrol officers. Kalamazoo County had no such protocols for patrol officers who informally receive evidence through personal channels, no designated person responsible for ensuring that evidence reaches CID, and no training on the obligation to do so. This institutional gap, compounded by the County's own contradictory confidentiality directive, directly caused Plaintiff's constitutional deprivation.

**Failure to Train — Conflict of Interest Disclosure and Recusal**

130.   Kalamazoo County further failed to train its officers on their obligation to disclose conflicts of interest and seek recusal when a personal or familial relationship exists with a witness, resident, or source of evidence connected to an active criminal investigation. Deputy Cook had an obvious and significant conflict of interest from the moment he arrived at the scene: his nephew lived directly above the aggressor's (Johnson) apartment. KCSO Directive 1.0.4 requires that employees "shall never allow personal feelings, animosities, or friendships to influence official conduct," and the Code of Ethics requires that officers "never act officiously or permit personal feelings, prejudices...animosities or friendships to influence my

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

decisions." Despite these general admonitions, no KCSO written directive required an officer to affirmatively disclose to supervisors and CID a familial relationship with a crime scene resident or evidence source, and no directive required supervisors to inquire of responding officers whether they had any such personal connection.

131. While KCSO Directive 1.0.4, Section VI.G, requires personnel to notify supervisors when they are "a suspect, victim, or witness in a criminal investigation conducted by another law enforcement agency," this provision did not extend to Cook's situation — he was not a suspect, victim, or witness, but an officer with a family member who lived at the crime scene and provided him with evidence. The obvious and foreseeable risk that a responding officer with a familial connection to a crime scene would suppress evidence obtained through that family member was entirely unaddressed by any KCSO policy or training.

132. As stated in *Kyles v. Whitley*, 514 U.S. 419 (1995), prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." For that duty to be dischargeable in practice, the police must have internal systems that surface evidence to prosecutors — systems that depend on officers disclosing conflicts of interest and routing evidence up the chain. Where, as here, no such internal system exists and an officer with a conflict of interest is left to manage evidence entirely on his own, the government's Brady obligation is effectively nullified at the source. The County's

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

failure to build those systems despite this clearly established legal framework, and despite its own public commitment to provide officers with clear guidance on their obligations, constitutes deliberate indifference.

133.    Good faith is no defense to a Brady violation: "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Kalamazoo County cannot escape *Monell* liability by pointing to Cook's subjective belief that the recording lacked evidentiary value. The constitutional obligation is objective, and the County's failure to train its officers to that objective standard — rather than leaving them to apply their own lay judgment — is itself the constitutional wrong.

**Failure to Supervise**

134.    Kalamazoo County also failed to adequately supervise Deputy Cook in connection with the July 23, 2023 homicide investigation. Cook was one of the first officers to respond to 1506 Concord Place Drive — a location where his own nephew lived directly above the aggressor's apartment. This conflict of interest was objectively identifiable from any review of the initial response roster alongside the property records for the scene. No supervisor at the Kalamazoo County Sheriff's Office inquired of Cook whether he had any personal connection to the crime scene,

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                                    Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                                    Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

the victim, the witnesses, or any of the residents. No supervisory follow-up process existed for identifying potential conflicts of interest among first responders to crime scenes.

135.   As the Sixth Circuit recognized in *Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019), a "custom of failing to train its officers on the handling of exculpatory materials is sufficient to establish the requisite fault on the part of the [municipality]" and a jury may find deliberate indifference where a municipality's training program fails to address officers' disclosure obligations. The same principle applies here with even greater force: not only did the County fail to train on disclosure obligations, but its confidentiality directive created affirmative confusion about those obligations, and no supervisor was positioned or instructed to catch the resulting failure.

**Causation and Injury**

136.   Each of these County failures — the failure to train on evidence disclosure by non-investigative officers, the failure to train on conflict-of-interest management, the affirmative confusion created by Directive 1.0.36, and the failure to supervise officers with personal connections to investigations — constitutes deliberate indifference to the rights of persons like Plaintiff who interact with Kalamazoo County Sheriff's Office personnel. The "likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that

**Amended Complaint**

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

situation will violate citizens' rights" justifies a finding of deliberate indifference by policymakers.

137.    These failures were the direct and moving force behind the violation of Plaintiff's constitutional rights. Had the County trained its officers on evidence disclosure and conflict of interest obligations, reconciled its confidentiality directive with officers' Brady duties, and had supervisors followed up with Cook in the days following the homicide, the TikTok recording would have been disclosed to CID immediately after July 24, 2023. The murder charge against Plaintiff would not have been prosecuted — or at minimum Plaintiff would not have remained incarcerated — for over two years.

138. As a direct and proximate result of Kalamazoo County's unconstitutional policies, customs, failures to train, and failures to supervise, Plaintiff suffered the deprivation of his Fourth and Fourteenth Amendment rights, including wrongful pretrial incarceration for approximately two years and three months, severe emotional distress and post-traumatic stress disorder, damage to his reputation, and substantial economic losses.

**WHEREFORE**, Plaintiff seeks judgment against Defendant Kalamazoo County for compensatory damages, costs, and attorney fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                                    Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                                   Jon R. Marko, Esq.

## COUNT IV
**Malicious Prosecution Under Michigan Law**
(Against Defendant Deputy Duryl Cook)

139.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

140.   Defendant Deputy Duryl Cook is liable for malicious prosecution under the laws of the State of Michigan.

141.   The elements of malicious prosecution under Michigan law are: (1) a criminal proceeding was instituted or continued by the defendant against the plaintiff; (2) the proceeding terminated in favor of the plaintiff; (3) the defendant lacked probable cause for initiating or continuing the proceeding; and (4) the defendant acted with malice or a primary purpose other than that of bringing the offender to justice.

142.   As detailed above, Defendant Cook instituted and continued a criminal proceeding against Plaintiff by deliberately suppressing exculpatory evidence, ensuring that prosecutors and investigators operated on an incomplete and misleading factual record, and allowing the murder charges to proceed for over two years while concealing the TikTok recording and his familial conflict of interest.

143.   The proceeding terminated in Plaintiff's favor when Count One (Open Murder) was dismissed as part of the plea agreement, reached immediately following the disclosure of the long-suppressed exculpatory evidence on November 4-5, 2025.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                         Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                       Jon R. Marko, Esq.

144. Defendant Cook lacked probable cause for the reasons stated throughout this Complaint, including his deliberate withholding of the TikTok recording establishing that the nine millimeter shot twice before the gunfire from the rifle, his concealed familial conflict of interest, and the complete absence of any reliable evidence supporting premeditated murder once the exculpatory evidence was considered.

145. Defendant Cook acted with malice or a primary purpose other than bringing the offender to justice. Malice is demonstrated by Cook's deliberate suppression of exculpatory evidence for over two years while Plaintiff remained incarcerated on a life offense, his concealment of the familial conflict of interest, and his continued silence despite the obvious severity of harm to Plaintiff's liberty. Cook was expressly bound by KCSO Directive 1.0.4, which prohibited withholding material matter from reports and required personnel never to allow friendships or personal relationships to influence official conduct. He had sworn an oath to "protect the innocent against deception" and to be "[h]onest in thought and deed both in my personal and official life." His sustained violation of these obligations, combined with the severity of harm to Plaintiff, demonstrates a purpose other than securing justice. Under Michigan law, malice can be inferred from the absence of probable cause and from conduct demonstrating a purpose other than securing justice,

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

including the deliberate or reckless disregard for Plaintiff's rights while pursuing conviction through suppression of material evidence.

146.   As a direct and proximate result of Defendant Cook's malicious prosecution, Plaintiff suffered severe damages, including loss of liberty for approximately two years and three months, severe emotional distress and post-traumatic stress disorder, damage to his reputation, humiliation and public stigma, and the incurrence of significant criminal defense legal fees and costs.

**WHEREFORE**, Plaintiff seeks judgment against Defendant Deputy Duryl Cook for compensatory and exemplary damages in an amount to be determined at trial, plus costs, interest, and any other relief this Court deems just and proper.

## COUNT V
**Gross Negligence**
(Against Defendant Deputy Duryl Cook)

147.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

148.   Under Michigan law, governmental employees are not immune from tort liability for conduct that amounts to gross negligence that is the proximate cause of a plaintiff's injury. MCL § 691.1407(2)(c).

149.   "Gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL § 691.1407(8)(a).

150.   At all relevant times, Defendant Deputy Duryl Cook was acting in the course and scope of his employment with the Kalamazoo County Sheriff's Office.

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

JM MARKO LAW

He was under a duty to avoid engaging in conduct so reckless that it demonstrated a substantial lack of concern for whether Plaintiff would suffer injury from a baseless and unconstitutional prosecution.

151.   Defendant Cook breached this duty and engaged in grossly negligent conduct by, among other things:

a. Obtaining a TikTok video (short clip) on July 24, 2023, at 3:11pm — within 24 hours of the homicide — material evidence establishing that the nine-millimeter shot twice before the gunfire from the rifle, and deliberately suppressing it for over two years while Plaintiff remained incarcerated on a life offense;

b. Failing to disclose the exculpatory evidence to the Criminal Investigation Division, the lead investigators, or the Kalamazoo County Prosecutor's Office despite a clear duty to do so under both constitutional law and KCSO Directive 1.0.4, which expressly prohibited withholding material matter from reports and required investigative cooperation;

c. Concealing a significant conflict of interest — that his nephew, Jacorian Thompson, lived in the apartment directly above the victim, Davion Johnson — while serving as a responding officer on the same investigation, in violation of Directive 1.0.4's requirement that employees "shall never allow personal feelings, animosities, or friendships to influence official conduct" and his sworn Code of Ethics obligation to "protect the innocent against deception;"

d. Allowing the prosecution of Plaintiff to proceed for over two years based on incomplete and misleading information while possessing evidence that contradicted the prosecution's theory and supported a self-defense claim; and

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*
Case No.: 1:26-cv-1222

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW
JM MARKO LAW

e. Maintaining this suppression of evidence despite knowing that Plaintiff was detained on open murder charges carrying a potential life sentence.

152.   This conduct was so reckless as to demonstrate a substantial lack of concern for whether Plaintiff would be wrongfully arrested, prosecuted, convicted, and imprisoned as a result of Defendant Cook's deliberate concealment of exculpatory evidence.

153.   The grossly negligent conduct of Defendant Cook was the proximate cause of the malicious prosecution of Plaintiff and the resulting injuries and damages he sustained, including loss of liberty for approximately two years and three months, severe emotional distress and post-traumatic stress disorder, reputational harm, humiliation, and substantial financial losses including criminal defense costs.

**WHEREFORE**, Plaintiff seeks judgment against Defendant Deputy Duryl Cook, in his individual capacity, for compensatory and exemplary damages in an amount to be determined at trial, plus costs, interest, and any other relief this Court deems just and proper.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff ANTWON DONTAE ROLLAND II respectfully requests that this Honorable Court enter judgment against Defendants as follows:

   a. Awarding Plaintiff compensation for all economic damages, including but not limited to lost income, lost earning capacity, lost career growth and educational

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                    Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                   Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

advancement opportunities, criminal defense attorney's fees, expert witness fees, investigation costs, and all other financial losses, in whatever amount he is found to be entitled;

b.  Awarding Plaintiff compensation for all non-economic damages, including but not limited to his loss of liberty for over two years, emotional distress, post-traumatic stress disorder, pain and suffering, humiliation, fear, anxiety, reputational harm, loss of the opportunity to be present for the birth of his son, and all other intangible losses, in whatever amount he is found to be entitled;

c.  Awarding Plaintiff punitive damages against Defendant Deputy Duryl Cook, in his individual capacity, for his malicious, willful, and reckless conduct, in an amount sufficient to punish him and to deter him and others from engaging in similar conduct in the future;

d.  Awarding Plaintiff pre-judgment and post-judgment interest as allowed by law;

e.  Awarding Plaintiff his costs of suit;

f.  Awarding Plaintiff reasonable attorney's fees pursuant to 42 U.S.C. § 1988 for the federal civil rights claims and as otherwise permitted by law; and

g. Awarding Plaintiff any other and further relief this Court deems just and proper.

Respectfully submitted,

Dated: July 2, 2026

*/s/ Michael L. Jones*
Michael L. Jones (P85223)
Attorneys for Plaintiff
**Marko Law, PLLC**
220 W. Congress, Fourth Floor
Detroit, MI 48226
Ph: (313) 777-7777
michael@markolaw.com

**Amended Complaint**

*Rolland v. Kalamazoo County, et al.*                    Michael L. Jones, Esq.
Case No.: 1:26-cv-1222                                    Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW